[Cite as *State v. Bell*, 2017-Ohio-8959.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                                   :        APPEAL NO. C-160608
                                                          TRIAL NO. B-1401726
    Plaintiff-Appellee,                      :
                                                          *O P I N I O N.*
  vs.                                          :

JAMES BELL,                                      :

    Defendant-Appellant.                     :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 13, 2017


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Soumyajit Dutta*, for Defendant-Appellant.

**MILLER, Judge.**

{¶1}  Following a jury trial, James Bell was convicted of aggravated burglary, aggravated robbery, two counts of felonious assault, and kidnapping—each with an accompanying firearm specification—and having a weapon while under a disability.  The trial court imposed an aggregate term of 52 years of incarceration. We affirm.

### A Home Invasion and a Kidnapping

{¶2}  Returning home one evening, Cortaize Parker and Aunise Brown, along with their two children, parked near the backdoor of the family's townhouse. Parker went inside, while Brown started to get the children out of their car seats. Parker heard screams, opened the backdoor, and saw an unidentified man holding Brown and the children at gunpoint.  A second unidentified man entered Parker's house, shot Parker in the leg, and let a third man in through the front door.  Parker identified Bell as the third man.  Parker suffered multiple gunshot wounds from Bell and the unknown assailant.  While Parker lay bleeding, the two men ransacked Parker and Brown's home, stole money, and left.

{¶3}  Parker called 9-1-1.  He did not identify Bell by name during the call. Parker was transported to the hospital and, almost immediately upon his arrival, was questioned by police officer Adam Wood.  Parker told Officer Wood that one of the men involved was "James," who Parker knew as the brother of Brown's best friend, Melanzie Williams.   At the hospital, Parker also separately identified Bell to Detective Dustin Weekly. Parker did not speak with Brown before identifying Bell to police.

{¶4}  Meantime, the three perpetrators forced Brown to leave her children in the townhouse's parking lot and abducted her.  They drove her to the apartment of

Brown's cousin, Sharon Brown. The men force Brown to lie on a bed while they rummaged through a back room.

{¶5} Once the men left, Brown immediately called her mother, Anita Brown, and asked Anita to get Brown's children. Brown next called 9-1-1. She told the 9-1-1 operator that she could not identify any of the men involved. Police responded to Sharon's apartment and immediately questioned Brown. She did not identify Bell.

{¶6} At trial, Brown, who knew Bell, stated that Bell had a very distinctive voice, and that she recognized his voice during the car ride from her home to Sharon's. Brown also testified that, as soon as the men had left Sharon's apartment, she opened the front door of the apartment and saw Bell in the hallway.

{¶7} The defense questioned Brown about her failure to name Bell at the scene or on the 9-1-1 call. Brown explained that she was too preoccupied with her children's safety to initially identify Bell. However, she thought she had told police later on that night that one of the perpetrators was "James Williams," Melanzie Williams's brother. At the time, Brown didn't know that James and Melanzie had different last names. The defense also cross-examined Brown concerning her connection to other possible suspects, including a man named Damon Kirkenhall whose fingerprints were found at the scene. She denied knowing Kirkenhall.

{¶8} Two days after the home invasion, Parker picked Bell out of a photographic lineup. Within a month, Anita Brown received a handwritten, unsigned letter that included details referencing the home invasion and kidnapping. Anita Brown put the letter into a plastic bag, and 14 months later turned the letter over to police. Police tested the letter. Bell's fingerprints were on it.

{¶9} Bell testified in his own defense. He admitted that he wrote the letter but denied involvement in the home invasion and kidnapping. He testified that he had been at Sharon's apartment complex selling drugs all day, and that he had seen Brown being dragged from a car and forced to go to an apartment. Bell claimed that he grabbed an AK-47, and went to Sharon Brown's apartment to investigate and help. According to Bell, it was at this point that Brown saw him.

{¶10} The court limited Bell in his cross-examination of Parker, Brown and Detective Weekly. According to a proffer Bell made to the court, Bell wanted to cross-examine these witnesses to present evidence that Brown and Parker had had a troubled relationship, including a specific incident where Brown had stabbed Parker, just two weeks prior to the home invasion, and to propose that Brown had orchestrated the home invasion and shooting as a way to "get back" at Parker. The defense wanted to suggest that it was Brown's brother, Antonio Brown, along with Kirkenhall, who had shot Parker, and that Brown wanted to set up Bell to protect herself and the real assailants.

### Argument and Analysis

{¶11} ***Bell was denied his right to cross-examination, but the error was harmless beyond a reasonable doubt.*** In his first assignment of error, Bell contends that the trial court violated his right to due process of law and his right to confront the witnesses against him when it refused to let him present his defense. More specifically, Bell challenges the trial court's rulings precluding him from cross-examining Parker about Brown allegedly stabbing him; cross-examining Brown about familial connections between herself and Kirkenhall that would tend to show that Brown knew Kirkenhall well; and cross-examining Detective Weekly, who had interviewed Parker at the hospital, about whether he thought that Parker was

4

dishonest. Bell also contends that the trial court erred by refusing to allow him to question one of his own witnesses, investigating officer Justin Hussell, concerning text messages found on Brown's cell phone.

{¶12} The Confrontation Clause of the Sixth Amendment to the United States Constitution gives the accused the right to confront the witnesses against him; however, it "guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 83, quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Accordingly, the court has " 'wide latitude  * * *  to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " (Emphasis deleted.) *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223, ¶ 64 (8th Dist.), quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). "To establish a Confrontation Clause violation, the defendant must show that he was 'prohibited from engaging in otherwise appropriate cross-examination' and '[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination.' " *Id.*, quoting *Van Arsdall* at 680.

{¶13} Bell was permitted to draw some inferences regarding Brown's alleged set-up of him. Specifically, the defense asked Brown about her failure to initially identify Bell to investigating officers or in the 9-1-1 call, and about her alleged connection to Kirkenhall, whose fingerprints were found at the scene. However, the

5

trial court should have permitted Bell to continue with this line of questioning when cross-examining Brown, and should also have allowed Bell to ask Parker and Brown about their allegedly acrimonious relationship. According to Bell's proffer, Brown knew Kirkenhall through family connections, and would have tried to protect him. Further, Brown allegedly had a motive to hurt Parker—namely, her troubled relationship with him that had supposedly lead to Brown stabbing Parker just two weeks before the home invasion. Allowing Bell to question Brown and Parker about these matters raise none of the concerns cited in *Van Arsdall*. This line of questioning was key to Bell's defense.

{¶14} While we find that the trial court erred in limiting Bell's cross-examination of Brown and Parker, we hold that the error was harmless beyond a reasonable doubt. In *Van Arsdall*, the United States Supreme Court held that a Confrontation Clause error is subject to a harmless-constitutional-error analysis. The correct inquiry, is "assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall* at 684. Whether the error is harmless depends on a number of factors, including: the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Id.*

{¶15} Here, there is no doubt that Brown's testimony was important. Only she and Parker identified Bell. But Parker identified Bell, who he knew through Melanzie Williams, to two officers shortly following the shooting. And Parker testified that he had not spoken to Brown before being questioned by police. This

6

evidence strongly discredits the defense's proposed theory. Even if the defense had been allowed to argue that Brown had set up Bell, Bell would be hard-pressed to establish that Brown was able to convince Parker during his ambulance ride to the hospital to frame Bell. Further, Bell sent a handwritten letter to Brown's mother that referenced the crimes at issue. Given Parker's eyewitness identification and the letter, combined with the overall strength of the state's case and the cross-examination that the court did permit, we hold that the damaging potential of Bell's proffer was negligible, at best. Accordingly, the error by the trial court was harmless beyond a reasonable doubt.

{¶16} In regard to Detective Weekly's testimony, we hold that the trial court properly excluded the detective's testimony concerning Parker's truthfulness. *See State v. Boston,* 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989), *overruled in part on other grounds, State v. Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944 (holding that it is error to allow a witness to comment on the credibility of another witness).

{¶17} Finally, Bell takes issue with what he characterizes as the trial court's ruling that precluded him, on direct examination, from asking one of the investigating officers about text messages found on Brown's phone that allegedly referenced a "JB"—James Bell. However, the trial court did not deny Bell the opportunity to ask this. Instead, the court sustained a proper objection that counsel's question was leading. Upon rephrasing the question, the detective responded that he did not have anything written in his notes or recall anything about the text messages.

{¶18} Bell's first assignment of error is overruled.

7

{¶19} ***The letter was properly authenticated.*** In his second assignment of error, Bell argues that the letter he wrote should not have been admitted into evidence because the state failed to establish a chain of custody and also failed to adequately link Bell to the letter.

{¶20} "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A); *Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, ¶ 9 (1st Dist.). We review the trial court's judgment for an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶21} Establishing a chain of custody is part of Evid.R. 901(A)'s authentication requirement. It is well-established that the state is not required to prove a perfect chain of custody. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 57, quoting *State v. Keene*, 81 Ohio St.3d 646, 662, 693 N.E.2d 246 (1993). Here, Anita Brown testified that she received the letter within a month of the crimes at issue. She put the letter in a plastic bag and gave it to police approximately 14 months later. This established the chain of custody. Bell contends that the state was required to prove who had access to the letter before and after Anita Brown received it. It did not. Bell's argument goes to the weight of the evidence, instead.

{¶22} Next Bell argues that the state didn't establish that Bell had written the letter. Evid.R. 901(B) provides examples of authentication or identification conforming with the requirements of Evid.R. 901(A). Evid.R. 901(B)(4) is instructive. That subsection, entitled "Distinctive Characteristics and the Like," provides that "[a]ppearance, contents, substance, internal patterns, or other

distinctive characteristics, taken in conjunction with circumstances" can be used to authenticate evidence. In this case, Anita Brown testified that she received the letter within a few weeks after the events in question. Detective Weekly testified that the letter appeared to reference events relating to the case. Detective Weekly ran the letter for fingerprints and discovered one of Bell's on the letter. Based on the timing of the letter, the references in it relating to the case, and the presence of Bell's fingerprint, we hold that the trial court did not abuse its discretion in finding that the state had laid a proper foundation for the admission of the letter.

{¶23} Bell's second assignment of error is overruled.

{¶24} ***Matters outside the record will not be reviewed on direct appeal.*** In his third assignment of error, Bell argues that he was denied the effective assistance of trial counsel. Bell claims that counsel was ineffective for (1) failing to offer into evidence the notes of one of the investigating officers; (2) failing to offer into evidence an audio recording of the interview between Parker and Detective Weekley at the hospital; (3) misplacing notes from an investigating officer, Detective Meyer, that may have included exculpatory statements from Brown; and (4) failing to subpoena Detective Meyer to testify.

{¶25} The state is correct that all of these assertions reference matters outside of the record, and therefore that this argument is not proper on direct appeal. *See Morgan v. Eads,* 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13; *State v. Wyche*, 1st Dist. Hamilton No. C-160678, 2017-Ohio-7041, ¶ 4. Bell's third assignment of error is overruled.

{¶26} ***No evidence of judicial bias.*** In his fourth assignment of error, Bell contends that his due-process rights were violated because the court exhibited judicial bias.

{¶27} Judicial bias is demonstrated by "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus; *see State v. Loudermilk*, 1st Dist. Hamilton No. C-160487, 2017-Ohio-7378 (applying *Weygandt*).

{¶28} The trial judge here was short with defense counsel at times, especially during counsel's proffer of Bell's proposed defense. However, the record contains no evidence that the trial judge reached any decision based on bias against Bell. Bell points to his severe sentence as evidence of bias. However, given the nature of these crimes—a home invasion and shooting, a kidnapping, and the ransacking of two homes—the sentence was justified. Further, Bell does not contest his sentence on appeal. Bell's fourth assignment of error is overruled.

{¶29} ***Bell's convictions are not against the weight of the evidence.*** In his fifth and final assignment of error, Bell contends that his convictions were against the manifest weight of the evidence. They were not. While Bell presented a version of events that, if believed, would have exonerated him, there is no indication that in weighing the evidence presented the jury "so lost its way" as to create a manifest miscarriage of justice warranting a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The fifth assignment of error is overruled.

## Conclusion

{¶30} Bell's convictions for aggravated burglary, aggravated robbery, two counts of felonious assault, kidnapping, and having a weapon while under a disability, and the accompanying firearm specifications, are affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **DETERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.