[Cite as *State v. Smith*, 2019-Ohio-3257.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180499 |
| | | TRIAL NO. 18CRB-60 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| TYRONE SMITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: August 14, 2019

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Jennifer Bishop*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge**.

{¶1}   In this aggravated menancing case, a critical witness failed to show up for trial, so the state opted to present her "testimony" via the expediency of a police body-camera interview.  This interview occurred well after the incident at hand and can only be characterized as "testimonial" in our Confrontation Clause lexicon.  The court accordingly erred, both on constitutional and hearsay grounds, in admitting this evidence, and the error cannot be brushed aside as harmless because the court specifically relied on this interview to convict the defendant.  We accordingly reverse the decision below and remand for a new trial.

I.

{¶2}   On New Year's Day 2018, William Jeffreys and his girlfriend, Nadia Faulk, spent the day together running errands and planned to attend a concert later that night.  At the same time, defendant-appellant Tyrone Smith (Ms. Faulk's former beau), arrived at Ms. Faulk's home with his own notion that the two would be spending time together that evening.  When Mr. Smith arrived at Ms. Faulk's home, however, she was not there.  While waiting, Mr. Smith's friend, Bryant Wilson, arrived at the house to join him, and shortly thereafter Mr. Jeffreys showed up to drop off Ms. Faulk.

{¶3}   According to Mr. Jeffreys, upon arriving at her house, he pulled into the driveway next door and another car pulled up behind him, blocking his car.  With the car blocked, Mr. Smith approached Mr. Jeffreys's car window and began threatening to kill Mr. Jeffreys with a gun.  At some point, Ms. Faulk exited from the vehicle, imploring Mr. Smith to stop.  Eventually, the vehicle blocking Mr. Jeffreys's car moved, and he left the scene.

{¶4}   Upon returning home, Mr. Jeffreys testified that he called the police, and officers responded at 1:34 a.m., arriving to his house a few minutes later.  After speaking

with Mr. Jeffreys and gathering details about the incident, the officers and Mr. Jeffreys proceeded to Ms. Faulk's residence, approximately a mile away. Upon arriving at Ms. Faulk's house, the two officers approached the house and, once inside, began talking to Mr. Smith (who, notwithstanding the earlier altercation, succeeded with his plan to hang out with Ms. Faulk). Realizing that Mr. Smith was the alleged perpetrator, the police handcuffed him, and Mr. Jeffreys confirmed his identity as the pepetrator. The police then attempted to speak more with Mr. Smith, but he proved unwilling to cooperate, and thus the officers turned their attention to Ms. Faulk. Though she initially hestitated in responding, upon prodding and a directive to "tell the truth," Ms. Faulk stated that "I can't really even explain what really happened," but then conceded that "it happened." One of the officers then clarified: "[Mr. Smith] pulled a gun on you?" and Ms. Faulk confimed. The police then asked her about the location of the gun, and she responded that Mr. Smith's friend, Mr. Wilson, took the gun away from the premises. Ms. Faulk also asked rhetorically: "I swear why would I be lying?" and stated that she had tried to go to a neighbor's house to call the police. Ms. Faulk also reminded Mr. Smith that she had told him that she would call the police on him because it "was not cool." The police then formally placed Mr. Smith under arrest.

{¶5} At a bench trial, Ms. Faulk never appeared to testify, despite being subpoenaed. Because she was not present at trial to testify, and over the objections of defense counsel, the judge admitted into evidence the police body-camera footage of the officers' interview with her. The court deemed the video statements admissible in light of the "ongoing emotional situation that occurred and that qualifie[d] as an exception to the hearsay rule."

{¶6} The admission of Ms. Faulk's corroborating testimony would prove decisive at trial, as credibility issues plagued Mr. Jeffreys's testimony. At trial, Mr. Jeffreys maintained that the incident took place sometime between 5:00 p.m. and 7:00 p.m., when there was still daylight. Describing the interaction between himself and Mr. Smith, Mr. Jeffreys maintained: "I believe it was around 6:00, 6:30 or so, 5:30 - - between 5:00 and 7:00 in the evening, I know that," and "day was starting to get dark. But it wasn't all the way dark * * * . [i]t was still enough daylight to see." On cross-examination, he explained: "It was still light out, yes. * * * Just starting to get dark. I don't know what time it was to be sure, but I know it happened." But Mr. Jeffreys also testified that he drove directly home and called the police immediately, and the police received the dispatch at approximately 1:30 a.m. on January 2 and arrived at his home a few minutes later. Furthermore, Mr. Wilson and Mr. Smith both maintained that the incident occurred much later in the evening. Mr. Wilson testified that he arrived at the house to meet Mr. Smith at 11:00 p.m. and that Mr. Jeffreys and Ms. Faulk arrived approximately 20 minutes later. Similarly, Mr. Smith described Mr. Jeffreys and Ms. Faulk's arrival to have occurred around 11:30 or 11:40 p.m. The conflict on the timeline matters because if it had still been daylight, Mr. Jeffreys's testimony about seeing a gun would have been more credible.

{¶7} During closing arguments, defense counsel drew the court's attention to the discrepencies in Mr. Jeffreys's testimony regarding the timeline of events. Defense counsel implied that he could not keep his facts straight because he was lying to incriminate Mr. Smith:

> [Mr. Jeffreys] knows how the system works; he's a convicted felon, violent
>
> felon. * * * And so he's got this story he is going to tell the police. You have
>
> two people that are interested in the same person; same woman, two men. So

4

he's going to make sure * * * Mr. Smith gets locked up.  So he says hey, he

pulled a gun on me.

* * *

But he can't keep his facts straight because he said it happened between five

and six o'clock.  It's still light.  How can there be such a discrepancy?

{¶8}    The court took notice of this "new wrinkle" and ordered transcripts for review.  When the court reconvened to render its verdict, the court informed defense counsel that, as to the discrepencies in Mr. Jeffreys's testimony: "Well I have to couple that with the video that we saw. * * * And in that video was one Nadia Faulk correct? * * * And she had some things to say in that video, and that causes me to find your client guilty."  The court then found Mr. Smith guilty of the aggravated menacing charge.

{¶9}    Mr. Smith now appeals and asserts two challenges to his conviction.  Initially, he posits that the admission of Ms. Faulk's statements in the body-camera footage violated both the rule against hearsay and the Confrontation Clause of the Sixth Amendment to the United States Constitution.  He also challenges the weight and sufficiency of the evidence supporting his conviction.   We begin our analysis with the first assignment of error challenging the admission of Ms. Faulk's statements, considering the Confrontation Clause before turning to hearsay and harmless error.

II.

A.

{¶10} Ms. Faulk's statements do not withstand scrutiny under the Confrontation Clause.  Although the rule against hearsay and the Confrontation Clause are "generally designed to protect similar ideals, * * * the Confrontation Clause may bar the admission of evidence that would otherwise be admissible under an exception to the hearsay rule."

(Citations omitted.)  *State v. Issa*, 93 Ohio St.3d 49, 60, 752 N.E.2d 904 (2001).  Indeed, the Confrontation Clause's " 'central concern * * * is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' "  *State v. Madrigal*, 87 Ohio St.3d 378, 384, 721 N.E.2d 52 (2000), quoting *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).  Therefore, the Confrontation Clause prohibits "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  *Crawford v. Washington,* 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), paragraph (a) of the syllabus. As a result, we review objections to evidence based on the Confrontation Clause de novo. *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732, ¶ 14 (9th Dist.); *State v. Burton*, 2017-Ohio-322, 77 N.E.3d 449, ¶ 16 (4th Dist.).

{¶11}  The parties do not dispute that Ms. Faulk's statements were uttered during the course of a police interrogation, which the United States Supreme Court teaches falls under the umbrella of "testimonial statements."  *Crawford* at 68 (testimonial statements at a minimum include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and * * * police interrogations").  Not all statements made in response to police questioning, however, are testimonial.   Instead, statements made during a police interrogation become testimonial when "the circumstances objectively indicate that there is no * * * ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution."  *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).  In *Michigan v. Bryant*, 562 U.S. 344, 374-376, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011), the Supreme Court elaborated on this point, and explained that the evaluation should consider both the questions by police and

the answers by the declarant, as well as any threat or risk of harm to others. In *Bryant*, the fact that the perpetrator mortally wounded someone with a gun, had unknown motives, and remained at large, sufficed to constitute an "ongoing emergency," thus shifting the primary purpose of the police's questions to meeting this emergency and securing public safety, and away from simply gathering evidence about past events. *Id.* at 374. Ultimately, the analysis for determining the primary purpose of the police interrogation must be viewed objectively and under the totality of the circumstances. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 156.

{¶12} Despite the state's contention that Ms. Faulk's statements did not trigger Confrontation Clause protections, the circumstances surrounding her statements demonstrate to the contrary. Initially, we note that the police had ascertained the course of events before arriving at Ms. Faulk's house by speaking with Mr. Jeffreys at his house and were therefore aware that the incident had ended some time before (two to several hours beforehand, depending upon who one believes). When they reached Ms. Faulk's house, they quickly realized who Mr. Smith was and handcuffed him, thereby neutralizing any conceivable threat. Likewise, Mr. Smith's apprehension diminished the seriousness of the missing gun (i.e., this is not a case like *Bryant* where the perpetrator shot someone and remained at large with the weapon). Additionally, Ms. Faulk knew the gun was no longer at the residence and told police as much.

{¶13} Nor did the police focus on any exigent threat or safety concern in their questioning. To the contrary, the police asked about what had happened, rather than what was happening, procuring information about the past course of events, which then led to the charges against Mr. Smith. Similarly, Ms. Faulk offered these statements in the presence of the police and presumably under their protection. These factors all closely mimic the facts

present in *Hammon v. Indiana* (consolidated with *Davis v. Washington*), which the Supreme Court found persuasive in determining that the witness's statements to police were in fact "testimonial." There, the court noted that the police arrived after a domestic violence incident drew to a close (no crashing of objects or yelling was heard as the police approached the house), the police questioned the victim about what happened, and there was no immediate threat to the victim's person. *Davis* at 829-830. The court contrasted the victim in *Davis,* who was alone and in immediate danger when she made the 911 call, with the victim in *Hammon*, who made the statements in the presence of police and was thus protected (like Ms. Faulk). *Id.* at 831. The court determined that "[o]bjectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime—which is, of course, precisely what the officer should have done." (Emphasis omitted.) *Id.* at 830. Likewise here, objectively viewing the circumstances surrounding Ms. Faulk's interrogation, the primary purpose of the questioning was to gather facts regarding a reported past crime for later prosecution and which, in fact, led to the formal arrest of Mr. Smith.

{¶14} Having determined that the statements were testimonial in nature, they could only be admissible if Ms. Faulk were present and available for cross-examination or if Mr. Smith had a prior opportunity to cross-examine her. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 ("Where testimonial evidence is at issue, however, the Sixth Amendment demands * * * unavailibility and a prior opportunity for cross-examination."). As neither of these circumstances applied, the admission of her interview by police violated the mandate of the Confrontation Clause, and the court erred in ruling to the contrary. Much like hearsay errors, Confrontation Clause violations are reviewed for harmless error, and since the harmless error analysis for both is indistinguishable, we collectively address

those in Part C below. *State v. Bell,* 1st Dist. Hamilton No. C-160608, 2017-Ohio-8959, ¶ 14; *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 22-24 (harmless error analysis for constitutional and nonconstitutional rights is the same); Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.").

B.

{¶15} Even if Ms. Faulk's statements did not run afoul of the Confrontation Clause, we would find that they violated basic hearsay norms. Hearsay is defined as an out-of-court statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Though normally inadmissible, under certain enurmerated exceptions, such statements can be entered into evidence as proof of the matter asserted. *See, e.g.,* Evid.R. 803 and 804. As we recently clarified, we review challenges to the admissibility of hearsay statements under an abuse of discretion standard. *HSBC Bank USA, Natl. Assn. v. Gill*, 1st Dist. Hamilton No. C-180404, 2019-Ohio-2814, ¶ 10.

{¶16} At trial, neither side disputed the hearsay nature of Ms. Faulk's statements, but instead quibbled about whether they fit within any of the recognized exceptions. The state insisted that the statements constituted either "excited utterances" or "present sense impressions," either of which provides a pathway to admissibility, with defense counsel maintaining that the statements fell outside the bounds of any exceptions. After evaluation of these issues, the court ultimately admitted the statements as "an ongoing emotional situation" exception to the rule against hearsay. While it is not exactly clear which exception the court had in mind, on appeal the parties focused our attention on the "excited utterance" or "present sense impression" exceptions to the rule against hearsay.

{¶17} The excited utterance exception encompasses statements made while a declarant is under the stress of a startling event. *State v. Taylor,* 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993). Therefore, hearsay statements may be admissible as an excited utterance when: 1) there is an event startling enough to cause "nervous excitement" in the declarant, 2) the statement, though not strictly contemporaneous, was made before the declarant had time for the nervous excitement to subside, 3) the statement related to the startling event, and 4) the declarant personally observed the startling event. Evid.R. 803(2); *Taylor* at 320-321.

{¶18} As a policy matter, we deem excited utterances "reliable because they do not entail an opportunity for the declarant to reflect, thus reducing the chance to fabricate or distort the truth." *State v. Lukacs,* 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 20 (1st Dist.). Therefore, when statements come with the opportunity for reflective thought, they cannot squeeze through the excited utterance exception to the rule against hearsay. *See State v. Harris,* 163 Ohio App.3d 286, 2005-Ohio-4696, 837 N.E.2d 830, ¶ 7 (1st Dist.) (hearsay statement erroneously admitted as an excited utterance because declarant, while still emotional at time of questioning, made statements clearly based on reflective thought).

{¶19} Ultimately, Ms. Faulk's responses to the police do not qualify as excited utterances because they "lacked the spontaneous quality necessary for an excited utterance." *See State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio-118, 866 N.E.2d 13, ¶ 34 (11th Dist.). Viewing the body-camera footage, the police officer asked Ms. Faulk what happened, she hesitated, the officer then admonished her to "tell the truth," and she finally, somewhat reluctantly, responded that "it happened." Ms. Faulk's behavior gives no indication that the spark of an exciting event was still alight at the time she spoke with the police. *See, e.g.,*

*State v. Henry,* 11th Dist. Lake No. 2007-L-142, 2009-Ohio-1138, ¶ 148 (declarant's statements qualified as excited utterances when "his house was ablaze, he pulled out his three grandchildren and unconscious wife from the residence, his son * * * was still in the burning house, and he was nervous, crying, and rattled"); *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 180 (gunshot victim's statements constituted excited utterances after he was shot, still bleeding and scared when he made the statements).

{¶20} For similar reasons, Ms. Faulk's statements fail to qualify under the "present sense impression" exception. Evid.R. 803(1) describes a present sense impression as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Though a statement made after an event can still pass muster as a present sense impression, it must stand very close in time to the event. *State v. Stafford*, 158 Ohio App.3d 509, 2004-Ohio-3893, 817 N.E.2d 411, ¶ 66 (1st Dist.) (present sense impression when statement was made "a matter of seconds after the accident"). As with an excited utterance, the justification for the present sense impression exception is the spontenaity of the statement and lack of time for the declarant's reflection. *State v. Alexander,* 1st Dist. Hamilton No. C-110035, 2012-Ohio-460, ¶ 18 (exception applied when "[declarant] had no time to reflect or to fabricate the substance of the conversation").

{¶21} Even considering the conflicting timeline of events at issue in this appeal, at a minimum over two hours elapsed since the incident transpired and when Ms. Faulk spoke with police. Mr. Wilson and Mr. Smith both testified that Mr. Jeffreys and Ms. Faulk arrived at the house at some time around 11:30 p.m. and Mr. Jeffreys's version of events takes place several hours prior to this. The passage of time since the incident, coupled with

Ms. Faulk's behavior in the video, undermines the policy justifications for allowing such statements into evidence, i.e., that statements made in close temporal proximity to the event they describe bear a high degree of trustworthiness. *See, e.g., State v. Essa,* 194 Ohio App.3d 208, 2011-Ohio-2513, 955 N.E.2d 429, ¶ 126 (8th Dist.) ("The key to the statement's trustworthiness is the spontaneity of the statement; it must be either contemporaneous with the event or be made immediately thereafter."). In sum, because the circumstances here do not indicate that Ms. Faulk was under the strain or the stress of the event, nor did she speak contemporaneously with the event, neither exception can apply. Finding that Ms. Faulk's statements satisfied neither the excited utterance nor present sense impresion exceptions, we hold that the court therefore abused its discretion in admitting the statements.

C.

{¶22} In many cases, we must wrestle with the harmless error analysis by comparing the impact of the improper evidence with the strength of the remaining evidence. In this case, our task is rendered easier because the trial judge directly relied on Ms. Faulk's statements to find Mr. Smith guilty.

{¶23} Harmless error review requires: 1) that the defendant was prejudiced by the admission of the improper evidence at trial, 2) that the appellate court believes that the error was "not harmless beyond a reasonable doubt," and 3) that after excising the improper evidence, the remaining evidence overwhelmingly supports finding the defendant guilty. *Morris,* 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, at ¶ 27-29.

{¶24} We find that the error here satisfies this standard. First, Mr. Smith was prejudiced by the admittance of the evidence, particularly given the credibility issues with Mr. Jeffreys. *See State v. Harris,* 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 39 (erroneous admission of testimony prejudicial and impacted verdict when "there [was] a

reasonable possibility that [the] testimony contributed to [the defendant's] convictions."). And we need not speculate on the impact of the erroneously admitted evidence in light of the court's outright acknowledgement of its reliance on the evidence in reaching its verdict. The court told defense counsel that Ms. Faulk's statements in the video caused it to find Mr. Smith guilty. Accordingly, we find that the error was prejudicial and not harmless beyond a reasonable doubt.

{¶25} Finally, as to the third prong of the harmless error anlysis, issues with the strength of the remaining evidence become apparent in the absence of Ms. Faulk's testimony. As no gun was ever recovered and the only other person present, Mr. Wilson, testified that he never saw Mr. Smith with a gun, the state's case was reduced to the dueling stories of Mr. Jeffreys and Mr. Smith. Ms. Faulk's statements essentially broke that tie in the court's mind, as it appears that it was not enamored with Mr. Jeffreys's testimony. Regardless, this is not a case in which, despite the improperly admitted evidence, there is other overwhelming evidence of guilt. *See Morris* at ¶ 30 (affirming lower court's decision to grant a new trial, where the weakness of the remaining evidence prevented the court of appeals from holding the error was harmless); *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 53-54 (ample evidence existed for conviction outside of alleged improper testimony). Thus, having determined that this error goes beyond "harmless," we find that the only remedy for the prejudice here is reversal and a new trial.

III.

{¶26} In addressing Mr. Smith's second assignment of error, we note that our determination that he is entitled to a new trial necessarily moots his weight of the evidence challenge, but his sufficieny of the evidence challenge remains relevant. *State v. Flannery,* 1st Dist. Hamilton No. C-140426, 2015-Ohio-1360, ¶ 15 (weight of the evidence argument

mooted when defendant was granted new trial, but not sufficiency argument because of the Double Jeopardy Clause). We therefore evaluate whether there was sufficient evidence to support a conviction for aggravated menacing.

{¶27} The aggravated menacing statute states that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.21(A). "Serious physical harm to persons" includes "any physical harm that carries a substantial risk of death." R.C. 2901.01(A)(5)(b). A challenge to the sufficiency of the evidence asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the crime proven beyond a reasonable doubt. *State v. Millikin*, 1st Dist. Hamilton Nos. C-030825 and C-030826, 2004-Ohio-4507, ¶ 15.

{¶28} At trial, Mr. Jeffreys indicated that Mr. Smith had come and knocked on his car window with a gun and held it there. He also emphasized that Mr. Smith had directly threatened to shoot him in a profanity-laced tirade. Mr. Jeffreys explained that he believed, because of these actions, Mr. Smith was going to shoot him.

{¶29} This testimony sufficed, if believed, to sustain a finding of guilt for aggravated menacing. "For the offense of aggravated menacing, '[i]t is sufficient to prove that the victim, in the moment, believed the defendant to be in earnest and capable of acting.' " *City of Cleveland v. Reynolds,* 8th Dist. Cuyahoga No. 105546, 2018-Ohio-97, ¶ 6, quoting *State v. Marcum*, 7th Dist. Columbiana No. 10 CO 17, 2011-Ohio-6140, ¶ 37; *see Flannery,* 1st Dist. Hamilton No. C-140426, 2015-Ohio-1360, at ¶ 17 (victim's testimony that he believed defendant would kill him coupled with circumstantial evidence supporting the statement was sufficient to prove a charge of aggravated menacing). Thus, Mr. Jeffreys's testimony

that Mr. Smith threatened to kill him and he believed him, along with circumstancial evidence, such as the fact that he reported the incident to police, sufficed, if believed, to prove the elements of the crime of aggravated menacing. Therefore, Mr. Smith's second assignment of error, insofar as it addresses the sufficiency of the evidence, is overruled.

{¶30} Based on the foregoing, we sustain Mr. Smith's first assignment of error and overrule his second assignment of error, in regards to the sufficiency of the evidence challenge. As his weight of the evidence challenge is moot, we do not address it. *See* App.R. 12(A)(1)(c). We accordingly remand this matter for a new trial consistent with the law and this opinion.

Judgment reversed and cause remanded.

**Mock, P.J.,** and **Crouse, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.