JOURNAL ENTRY and OPINION
{¶ 1} After a bench trial, the trial court found appellant, Steven Proctor ("Proctor"), guilty of two counts of aggravated burglary and one count of aggravated robbery, with repeat violent offender and notice of prior conviction specifications. The trial court sentenced Proctor to a total prison term of ten years — four years for the merged counts of aggravated burglary to run concurrent with four years for the aggravated robbery count, to run consecutive with three years for pleading guilty to aggravated robbery in case number 457396 and three years for pleading guilty to felonious assault and aggravated robbery in case number 455374.
 {¶ 2} At trial, the state presented three witnesses. The first witness to testify was the victim, a 94-year-old man who still works part-time as a security guard for a company on the graveyard shift. The victim testified that he was on his porch Saturday afternoon discussing scripture with a Jehovah's Witness when Proctor leaned on his fence and asked for money. After both the victim and the Jehovah's Witness each handed Proctor $5 and the victim gave him additional money because he thought Proctor might be hungry for a sandwich, Proctor told the victim that he'd be back later that day. When the Jehovah's Witness left, the victim went into his house to take a nap before he was due at work at 6:00 p.m.
 {¶ 3} As the victim was about to fall asleep, he heard his doorbell ring. He answered the door and found Proctor, wearing dungarees or jeans and a cap, standing on his front porch. The victim testified that Proctor said that he thought he left his keys in the victim's house. The victim let Proctor come into his house to look for his keys, but stated to Proctor that he did not think his keys were anywhere in his house. Proctor then told the victim that he thought he left his keys upstairs and, though the victim again told Proctor he did not think that his keys were anywhere in his house, allowed him to search for his keys. The victim testified that Proctor then mugged him at knife point, demanded that he hand over his wallet, and stole seven $20 bills and a $50 bill from the victim. Proctor also kicked in the victim's bedroom door, ordered him to sit down in a chair, "roughed" the victim up, and yanked a telephone out of the wall before leaving the victim's house. The victim left his house and arrived at work early because he was shaken from being robbed. When his shift was completed the following morning, the victim testified that he went to the police station to fill out a report, but indicated that the intake officer did not seem to "care much" about the incident.
 {¶ 4} The state's second witness, Shannon DeVine ("DeVine"), testified that, on the day that the victim was robbed, she stopped by the victim's house as she frequently did to check up on him, as well as pay him back for lending her some money. The victim was on his porch with Proctor and introduced him to DeVine. DeVine testified that the victim had been talking with Proctor for about 30 minutes to one hour and that she knew of Proctor, as well as his brothers, from the neighborhood. She also testified that on the following day, the victim told her that Proctor mugged him.
 {¶ 5} Finally, Detective Duke ("Duke") testified that, a couple of months after the incident, she was in the neighborhood investigating other crimes when she met DeVine. DeVine informed her that the victim was mugged by Proctor. Duke approached the victim, who told her that Proctor mugged him, and Duke asked the victim to identify Proctor in a photo array. The photo array consisted of four individuals, one of which was Proctor and two of which were Proctor's brothers who lived in the neighborhood. The victim told Duke, as he pointed out Proctor in the photo array, "that's him right there," and signed the picture.
 {¶ 6} Proctor testified at trial that he does not live next door to the victim and that he has never met the victim. Instead, Proctor explained that his brother, Sammie, lives next door to the victim and is always wearing dungarees.
 {¶ 7} The trial court granted Proctor's Crim.R. 29(A) motion for judgment of acquittal on one count of aggravated robbery, two counts of kidnapping, and one count of theft. It then found Proctor guilty of two counts of aggravated burglary and one count of aggravated robbery. Proctor now appeals his conviction and sentence.
 I. {¶ 8} Proctor asserts in his first assignment of error that plain error occurred when the trial court admitted "other acts" evidence and further asserts, in his second assignment of error, that he was denied the effective assistance of counsel when his counsel failed to object to the "other acts" testimony. Proctor also argues, in his third assignment of error, that he was denied the effective assistance of counsel when his counsel failed to move to suppress the photo identification made by the victim.
 {¶ 9} Evid.R. 404(B) provides in whole:
 {¶ 10} "Other crimes, wrongs or acts. — Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 11} Proctor complains that the trial court improperly allowed in Duke's testimony about Proctor's involvement in other crimes and allowed the state to question Proctor about his drug use. First, as Duke testified, her investigation of other robberies in the neighborhood led her to Proctor as the victim's offender. She testified that she canvassed the neighborhood looking for information about another robbery victim and spoke with DeVine who indicated that, while she had no information about the crime Duke was currently investigating, Proctor had robbed the victim at knife point. Duke then testified that Proctor was later determined to be the suspect in the other robberies in the neighborhood. The testimony regarding the other robberies was properly admitted because it was an extension of Duke's investigation and the impetus for investigating Proctor. Without this testimony, there would be a disconnection between Duke's initial investigation of the other robberies and her investigation of Proctor for his crimes against the victim. It was offered and admitted into evidence for the purpose of proving Proctor's identity and his scheme or plan in committing these crimes. Thus, Duke's testimony about Proctor's involvement in other robberies in the neighborhood does not constitute inadmissible "other acts" evidence and plain error did not occur at trial by admitting it into evidence.
 {¶ 12} However, the state's questions to Proctor of his prior drug use are "other acts" evidence and irrelevant to the crimes here of aggravated burglary and aggravated robbery. Indeed the state provides this court no basis for why such testimony is admissible, leaving this court to conclude that it was presented to the trial court to show that Proctor was a bad person or used drugs when he committed these crimes. Nonetheless, it cannot be said that improperly admitted evidence of prior drug use constituted plain error and would have resulted in Proctor's acquittal. Here, there was other credible evidence for the trial court to conclude that Proctor committed these crimes despite the prior drug use. In addition, the record reveals that the trial court did not even consider Proctor's drug use when it rendered its judgment. Though the state's questions as to Proctor's prior drug use constituted "other acts" evidence, it did not constitute plain error in light of the evidence supporting Proctor's convictions.
 {¶ 13} Turning to Proctor's arguments that he was denied effective assistance of counsel, in order for his claim to succeed, Proctor must prove that his counsel's performance was deficient and that, but for the deficiency, the outcome would have been different. See Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, Proctor cannot prove that his counsel's performance was deficient for failing to object to Duke's testimony because Proctor's involvement in the other crimes was provided for the purposes of proving Proctor's identity and/or plan. And, although Proctor's counsel's failure to object when the state questioned Proctor about his prior drug use satisfies the first prong of the Strickland test, Proctor fails the second prong as he cannot prove that, without such testimony, the trial court would have acquitted him. As this court discussed above, after hearing the evidence, it is highly unlikely that Proctor would not have been found guilty by the trial court had Proctor's counsel objected to the state's questions of Proctor's prior drug use. Thus, Proctor was not denied the effective assistance of counsel by counsel's failure to object to the testimony regarding Proctor's other crimes and his prior drug use.
 {¶ 14} Likewise, Proctor's argument that his counsel's failure to file a motion to suppress the photo array does meet the Strickland test. Proctor complains that the photo array was impermissibly suggestive because it consisted of four photos, which were black and white copies, the photos did not reflect facial hair or skin tones, and that Proctor's photo was the only one with a receding hairline. He also complains that the victim's identification was unreliable because he was not wearing his glasses when the victim robbed him. However, the photo array, upon which the victim identified Proctor, was a compilation of at least two of Proctor's brothers who lived in the neighborhood and three out of four photos showed facial hair. The victim identified Proctor without wearing his glasses, just as he would have seen him on the day he was robbed. Also, the testimony revealed that the victim knew Proctor because he spoke with Proctor on his porch before he was robbed. Because the photo array was neither impermissibly suggestive nor unreliable, it cannot be said that Proctor was denied the effective assistance of counsel when his counsel did not object to the photo array. Thus, Proctor's first, second, and third assignments of error are overruled.
 II. {¶ 15} Proctor argues in his fourth assignment of error that his convictions are against the manifest weight of the evidence because the state's witnesses were incredible. However, Proctor's argument is without merit.
 {¶ 16} The weight of the evidence and the credibility of the witnesses is solely for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,231, 227 N.E.2d 212. Here, the trial court specifically found that the victim, a 94-year-old man, was extremely credible given his age, his sound mind, and his ability to remember details. Although the victim had difficulty hearing, the trial court found his memory of the day he was robbed to be sharp and clear. The trial court also found DeVine's testimony to corroborate the victim's testimony and indicated that Duke's investigation was thorough and complete, especially in light of the initial intake officer's failure to follow-up with the victim's report. Based on the evidence, the trial court did not clearly lose its way in finding Proctor guilty of two counts of aggravated burglary and aggravated robbery. Proctor's fourth assignment of error is overruled.
 III. {¶ 17} Finally, in Proctor's fifth assignment of error, he argues that he was denied due process when the trial court imposed consecutive sentences for his convictions. In particular, Proctor asserts that the trial court did not make the required findings to impose consecutive sentences. However, the record from the sentencing hearing belies Proctor's argument.
 {¶ 18} R.C. 2929.14(E)(4) provides as follows:
 {¶ 19} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 20} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 21} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 22} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 23} Here, the trial court specifically found that consecutive sentences are required to protect the public and to punish Proctor, that consecutive sentences are not disproportionate to similarly situated offenders and the danger that Proctor poses to the public, that Proctor committed many of the crimes while he was on parole for murder, and that Proctor's criminal history warrants nothing less than consecutive sentences. In addition, the trial court reasoned that Proctor's crimes were committed on one day, making it part of a crime spree. Because the trial court complied with R.C. 2929.14(E)(4), the trial court's imposition of consecutive sentences was proper. Proctor's fifth assignment of error is overruled and his judgment of conviction and sentence is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Rocco, J., Concur.