**[Cite as *State v. Smith*, 2025-Ohio-1290.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No.  L-24-1108

    Appellee                                    Trial Court No.  CR0202302540

v.

Daiqjuan Smith                                 **DECISION AND JUDGMENT**

    Appellant                                 Decided:  April 11, 2025

\* \* \* \* \*

Julia R. Bates, Lucas County Prosecuting Attorney, and
Randy L. Meyer, Assistant Prosecuting Attorney, for appellee.

Henry Schaefer, for appellant.

\* \* \* \* \*

**ZMUDA, J.**

{¶ 1} Appellant, Daiqjuan Smith, appeals from the April 18, 2024 judgment of the Lucas County Court of Common Pleas convicting him of one count of murder and one count of felonious assault and sentencing him to two prison terms to be served consecutively.  Appellant's single assignment of error challenges the trial court's imposition of consecutive sentences.  For the reasons that follow, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} On October 3, 2023, the Lucas County Grand Jury indicted appellant on one count of murder in violation of R.C. 2903.02(A) and 2929.02, an unclassified offense (count 1); one count of murder in violation of R.C. 2903.02(B) and 2929.02, an unclassified offense (count 2); two counts of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a second-degree felony (counts 3 and 5); one count of attempt to commit murder in violation of R.C. 2923.02, R.C. 2903.02(A), and R.C. 2929.02, a first-degree felony (count 4); and one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3) and (C)(4), a first-degree felony (count 6). Each of the six counts had a firearm specification under R.C. 2941.145(A), (B), (C), and (F).

{¶ 3} The charges in the indictment resulted from an incident on September 23, 2023 in Toledo, Ohio in which appellant shot two people, killing one and seriously injuring the other, during an apparent drug sale. Appellant initially pled not guilty to the charges.

{¶ 4} On March 28, 2024, appellant changed his plea to guilty on count 1, murder in violation of R.C. 2903.02(A) and 2929.02, and count 3, felonious assault. Following a plea colloquy, the trial court accepted appellant's guilty plea as to counts 1 and 3 as well as noted the state's agreement to a nolle prosequi as to the remaining counts as well as the firearm specifications on all counts.

{¶ 5} The trial court ordered a presentence investigation (PSI). The PSI contained a victim impact statement that noted one of the victims died. As to the surviving victim,

2.

the PSI provided details about her physical injuries, noting that appellant shot her three times, including in her head and neck, and the victim still experienced pain from her injuries. In addition, as to psychological impact, the surviving victim had to move to a different city out of concerns for her safety, and her family and friends feared association with her due to the possibility that someone may attempt to harm her again.

{¶ 6} On April 18, 2024, appellant appeared for sentencing. The mother of the murder victim appeared and described the harm that she suffered due to her son's death as well as the hurt that her son's children suffered from the loss of their father. Appellant gave an oral statement stating that he took "full responsibility" for his actions and apologized to the victims' families, though he also stated that he "felt his life was in danger that night." In response, the court expressed doubt that appellant accepted full responsibility, noting that in his statement in the PSI, appellant claimed that one of the victims had a knife to explain why he shot at them. The court pointed out that nowhere else in the record was a knife mentioned, not even in appellant's sentencing memorandum, and the victims were heavy drug users living in a car, and appellant took advantage of their vulnerability. The court also noted that appellant was lucky that the second victim survived despite her multiple gunshot wounds or he would have been facing two murder charges.

{¶ 7} The court also reviewed appellant's criminal history, stating that although appellant did not have an extensive history, at the time he shot the victims, he was on a diversion program stemming from a gun charge and therefore was prohibited from possessing a firearm. The court also noted that according to the police investigation,

3.

appellant was selling drugs at the time of the shootings and "leading a criminal lifestyle."

Next, the court explained that it had reviewed the entire PSI, including a letter from the surviving victim, specifically noting the surviving victim's suffering as result of being shot multiple times. In addition, the court stated that it had reviewed the record, the oral statements, and appellant's sentencing memorandum, and the court imposed the following sentences: as to count 1, a prison term of 15 years to life; and as to count 3, a prison term of seven to ten-and-a-half years. The court ordered the sentences to run consecutively, finding as follows:

> Court will order these sentences to be served consecutively to each other. This is two crimes. This is not one crime. This is being necessary to fulfill the purposes of 2929.11, 2929.14(E) and not disproportionate to the seriousness of the offender's conduct or the danger the offender poses. The court will further find to protect the public from future crime and to punish the offender further the court will say that although it was diversion, you were under a community control sanction when this offense was committed. And then the court will also note that at least two of the multiple offenses were committed as part of one or more courses of conduct, the harm caused by multiple offenses was so great or unusual that no single prison term is adequate. Again, I can't give you one prison term when you have two victims. That would be acting like one of those victims does not exist.

Following appellant's sentencing as to counts 1 and 3, the courted entered a nolle prosequi as to counts 2, 4, 5, and 6 as well as the firearm specifications on all counts.

## II. Assignment of Error

{¶ 8} Appellant asserts the following assignment of error for review:

The trial court erred when it sentenced Mr. Smith to consecutive sentences.

### III.  Law and Analysis

{¶ 9} To impose consecutive sentences, R.C. 2929.14(C)(4) requires a trial court to make three findings at both the sentencing hearing and in the sentencing entry. *See State v. Bonnell*, 2014-Ohio-3177, syllabus; *State v. Sipperley*, 2020-Ohio-4609, ¶ 14 (6th Dist.).  Those findings are as follows: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the findings listed in R.C. 2929.14(C)(4)(a), (b), or (c).  *State v. Beasley*, 2018-Ohio-493, ¶ 252.

{¶ 10} Our review of consecutive sentences is governed by R.C. 2953.08(G)(2), which provides that to "increase, reduce, or otherwise modify a sentence," an appellate court must "clearly and convincingly find either …that the record does not support the sentencing court's findings" or "the sentence is otherwise contrary to law."  *State v. Jones*, 2024-Ohio-1083, ¶ 13.

{¶ 11} Here, appellant challenges the first and second findings required by R.C. 2929.14(C)(4), conceding that the trial court's third finding was appropriate.  As to both challenged findings, appellant claims that the trial court erred by merely quoting the statutory language and failing to cite to any specific evidence in support of its findings.  However, although "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4)…, it has no obligation to state reasons to support its findings."  *Id*. at ¶ 11, quoting *Bonnell* at ¶ 37.  Accordingly, the trial court did not err by failing to cite evidence or otherwise explain its reasons in support of its findings.

5.

**{¶ 12}** Next, as to the first finding under R.C. 2929.14(C)(4), appellant points out that the trial court stated that consecutive sentences were necessary to protect the public from future crime *or* to punish the offender. Appellant argues that because the trial court found in the alternative, the trial court's finding cannot be ascertained. Appellant also argues that the trial court's statement that two sentences were necessary because there were two victims is an inappropriate basis for consecutive sentences because the default for unmerged offenses is concurrent sentences.

**{¶ 13}** First, the trial court did not err by quoting the statutory language, even if its finding was in the alternative. A trial court is not prohibited from "directly recit[ing] the language in R.C. 2929.14(C)(4) regarding necessity," even if the court's finding is made in the alternative. *State v. Dawson*, 2024-Ohio-1806, ¶ 20 (6th Dist.). Again, regardless of the exact phrasing used by the trial court, our review focuses on whether the trial court engaged in the correct analysis. *Bonnell*, 2014-Ohio-3177 at ¶ 29. Moreover, although the existence of two victims alone may not support the imposition of consecutive sentences, a review of the record here supports a finding that consecutive sentences were necessary to protect the public from future crime. The court pointed out that while appellant was on a diversion program, he carried a firearm despite being prohibited from doing so, was selling drugs, and shot at two vulnerable people, killing one of them and seriously injuring the other. Accordingly, the trial court's reference to two victims was not the sole basis in the record to support the first finding required under R.C. 2929.14(C).

6.

**{¶ 14}** As to the second finding under R.C. 2929.14(C), the proportionality prong, appellant claims that because the parole board must determine he is not a danger to the public before he can be released from prison, the trial court could not have found that he poses a danger to the public. "The proportionality prong, however, focuses on the defendant's current conduct: the court must find that 'consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.'" *State v. Glover*, 2024-Ohio-5195, ¶ 53, quoting R.C. 2929.14(C). Accordingly, a court's finding under the proportionality prong does not concern solely whether an offender may someday pose a danger to the public, but whether consecutive sentences are "not disproportionate" to the seriousness of the conduct underlying the instant convictions and the danger the offender poses to the public at the time of sentencing based on that conduct. *See id.* Our inquiry, therefore, is whether we can clearly and convincingly find that the record does not support "a finding that the consecutive [sentences] were not disproportionate to the danger [appellant] posed to the public," not whether appellant poses "a low risk of committing future offenses." *State v. Kiefer*, 2021-Ohio-3059, ¶ 18 (6th Dist.).[1]

---

[1] Although appellant raised parole review solely in his challenge of the trial court's proportionality finding, his argument would fail even if we could construe his argument as challenging the trial court's first finding under R.C. 2929.14(C). *See State v. Hoskin*, 2022-Ohio-3917, ¶ 76-79 (8th Dist.) (affirming consecutive sentences despite appellant's argument that consecutive sentences were not necessary "to protect the public from him or punish him because he 'will not be released under the parole guidelines until he has been adequately punished and no longer represents a danger to society'").

**{¶ 15}** Here, a review of the record shows that the conduct underlying the instant offenses was very serious and demonstrates that appellant poses a great danger to the public. The court pointed out that despite being on a diversion program, appellant was "living a criminal lifestyle," attempted to take advantage of the two victims—who were particularly vulnerable because they were homeless and heavily addicted to drugs— during a drug transaction, repeatedly shot a firearm that he was prohibited from possessing, killed one victim, and nearly killed the second victim. At the sentencing hearing, the court noted that appellant failed to take full responsibility and continued to deflect blame for his actions. Furthermore, although parole review may prevent some recidivism, it is certainly not error proof, and Ohio case law contains many examples of dangerous offenses committed by individuals on parole. *See, e.g., State v. Miller*, 2014-Ohio-3907 (8th Dist.) (appellant committed aggravated murder, aggravated robbery, murder, kidnapping, felonious assault and other offenses while on parole for murder conviction); *State v. Proctor*, 2005-Ohio-5990 (8th Dist.) (appellant committed aggravated burglary and one count of aggravated robbery while on parole for murder conviction). Accordingly, we cannot clearly and convincingly find that the record does not support the trial court's finding that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and the danger he poses to the public.

**{¶ 16}** Because we do not clearly and convincingly find that the record does not support the trial court's findings under R.C. 2929.14(C), the trial court's judgment imposing consecutive sentences is affirmed, and appellant's assignment of error is not well-taken.

8.

## IV. Conclusion

**{¶ 17}** For the foregoing reasons, the April 18, 2024 judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                 _____
                                                        JUDGE

Gene A. Zmuda, J.

                                         _____

Charles E. Sulek, P.J.                                    JUDGE
CONCUR.

                                         _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.