[Cite as *State v. Wilcox*, 2025-Ohio-2207.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220472<br>TRIAL NO. B-2004192 |
| Plaintiff-Appellee, | : | |
| vs. | : | *JUDGMENT ENTRY* |
| QUANTEZ WILCOX, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the remand from the Ohio Supreme Court, the appeal, the record, and the briefs.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/25/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Wilcox*, 2025-Ohio-2207.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220472 |
| | | TRIAL NO. B-2004192 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| QUANTEZ WILCOX, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 25, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Jon Vogt*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Office of the Ohio Public Defender* and *Mallorie Thomas*, Assistant Public Defender, for Defendant-Appellant.

**NESTOR, Judge.**

{¶1} This case involves a deadly shooting that resulted in the conviction of defendant-appellant Quantez Wilcox. Wilcox spoke with his ex-girlfriend Doneisha Monroe outside the public library in downtown Cincinnati. Monroe's new boyfriend (the victim) approached the pair, and approximately six seconds later, Wilcox shot the victim and sped off down the street. The victim died shortly after. Wilcox was arrested and charged with six counts, including murder and felonious assault. He claimed that he acted in self-defense. At trial, the court admitted a ten-minute body-worn camera ("BWC") video of Monroe speaking with police, telling them about Wilcox's involvement in the shooting and his past behavior towards her. The jury returned guilty verdicts on all counts. That result prompted Wilcox's initial appeal to this court. We held (among other things) that the trial court's admission of the entire ten-minute BWC video violated Wilcox's Sixth Amendment right to confront adverse witnesses, as Monroe did not testify at trial. We remanded the cause for a new trial on Wilcox's murder charge.

{¶2} The State appealed our opinion to the Ohio Supreme Court. The Court held that the statements in the first half of the ten-minute video were nontestimonial. The Court concluded that statements in the first half of the video were potentially admissible under certain hearsay exceptions. It remanded the matter to this court to decide if the statements were admissible, which is the issue before us now. Based on the record and relevant caselaw, a portion of the statements in the first half of the BWC video were admissible, and the admission of the second part of the video and other hearsay statements constituted harmless error. Accordingly, we affirm the judgment of the trial court.

### I.    Factual and Procedural History

{¶3}   On the evening of August 19, 2020, Wilcox agreed to meet Monroe downtown. The pair previously dated and were no longer together, but they remained cordial. Wilcox parked his vehicle outside the public library in downtown Cincinnati. Surveillance video shows what appears to be Monroe approaching Wilcox's driver-side window. The pair spoke for approximately 15 minutes, and during that time, Wilcox remained in his vehicle.

{¶4}   As they continued to talk, the victim approached them. He walked in front of Wilcox's car, towards the driver-side window. Wilcox alleges that the victim then aggressively inquired what was going on and made threats, bent down to Wilcox's window, stood back up, and began to reach for his firearm on his left hip. Wilcox said that the victim's actions made him fearful, so Wilcox grabbed his own firearm from the passenger's seat, fired one shot at the victim's chest, and sped off.

{¶5}   A "downtown ambassador" (who worked to keep downtown clean and help anyone who needed assistance) witnessed the victim stumbling before collapsing in an alleyway nearby. As Wilcox sped off, he threw his firearm out of his car window. A citizen retrieved the firearm and gave it to police. Responding police officers in a cruiser saw Wilcox speed through a red light. They pulled him over, and he immediately stuck his hands out of his car and said that his brakes failed. Due to the proximity to the shooting, those officers decided to detain Wilcox until they received a description of the suspected shooter.

{¶6}   First responders continued to arrive at the scene of the crime, attempting to revive the victim and talk to witnesses. Officer Price arrived and spoke with Monroe, and his BWC recorded their conversation. Monroe was visibly shaken and upset about what she had just witnessed. Officer Price asked Monroe what

happened, and she alleged that Wilcox had been stalking her and had damaged her vehicle, which she previously reported to police. She gave Officer Price Wilcox's description, including his name, age, and a description of his vehicle and what he wore. Officer Price relayed that information over his radio. Monroe told Officer Price that she and the victim were walking when Wilcox shot him (which the surveillance video contradicts). She also noted that the victim did not fire any shots during the interaction.

{¶7} During their conversation, the officers that pulled Wilcox over said on the radio that they detained the suspect. However, Officer Price continued to ask Monroe about the series of events. She reiterated Wilcox's alleged previous acts and also stated that she was three months pregnant.

{¶8} Officers then took Wilcox to the police station for questioning. When asked about his involvement and told by detectives that video surveillance showed him at the scene, Wilcox disclaimed involvement. He told detectives that at the time of the incident, he was returning from a liquor store in Kentucky and drove through downtown on the way back to his girlfriend's house. He continued to tell detectives that he was in no way involved with the shooting. Wilcox never told detectives that he shot the victim in self-defense, which he now claims he did out of distrust of the police. Despite his insistence that he was not involved in the incident, officers detained Wilcox.

{¶9} The State charged Wilcox with two counts of murder under R.C. 2903.02(A) and (B), two counts of felonious assault under R.C. 2903.11(A)(2), one count of having weapons while under disability pursuant to R.C. 2923.13(A)(3), and one count of tampering with evidence under R.C. 2921.12(A)(1). Count 4 (felonious assault) was dismissed immediately before trial. Before the jury trial began, Wilcox

informed the prosecution that he intended to present a self-defense claim.

{¶10} At trial, the State presented a myriad of witnesses. However, Monroe (the only other living witness to the incident besides Wilcox) was not present and did not testify. Therefore, the only evidence of her statements regarding the incident were those that she made to Officer Price on his BWC video. Over Wilcox's objection, the trial court allowed the State to play the entire ten-minute BWC video to the jury, which included Monroe's statements made after other officers informed Officer Price over the radio that Wilcox was in custody. At trial, Wilcox admitted that he possessed a weapon while under disability and admitted to tampering with evidence. After each side presented their evidence, the jury returned guilty verdicts on all remaining counts. The trial court merged Wilcox's remaining felonious assault charge and one murder charge with the first murder charge. The trial court then sentenced him to 26 years to life in prison, running counts five and six consecutively to his other counts, instead of concurrently (which would have made his sentence 20 years to life).

{¶11} Wilcox then appealed to this court, asserting six assignments of error. He asserted that (1) the trial court's admission of the entire ten-minute BWC video violated his Sixth Amendment right to confront adverse witnesses (as Monroe did not testify at trial), (2) the jury's verdict as to the murder charge was unsupported by sufficient evidence and (3) was against the manifest weight of the evidence, (4) his trial counsel provided ineffective assistance when counsel failed to cross-examine a large number of the State's witnesses, (5) the trial court erred in not including his requested jury instruction, and (6) the trial court erred when it ran counts five and six consecutively to his other charges.

{¶12} In *State v. Wilcox*, 2023-Ohio-2940 (1st Dist.), we held, among other things, that the trial court's admission of the entire ten-minute BWC video violated

Wilcox's Sixth Amendment right to confront adverse witnesses. The State appealed our opinion to the Ohio Supreme Court.

**{¶13}** In deciding the issue, the Court split the BWC video into two parts, because, halfway through the interaction, Officer Price was informed that Wilcox had been arrested, and thus, he was no longer responding to an ongoing emergency. The Court held that from the time Officer Price heard of Wilcox's arrest, Monroe's statements were testimonial in nature and were violative of Wilcox's Sixth Amendment rights. *See State v. Wilcox*, 2024-Ohio-5719, ¶ 14. The Supreme Court remanded this cause and tasked us with determining whether (1) the first half of Officer Price's ten-minute BWC video contained hearsay evidence that is admissible under an exception, and if so, (2) whether the trial court's admission of the second half of the BWC video (which the Court deemed to be in error) constituted harmless error. If we decide that the first half of the BWC video was inadmissible, we must decide if the admission of the *entire* video was harmless error. We must then address the remainder of Wilcox's original assignments of error that we did not previously address.

## II. Analysis

### A. First Assignment of Error: The Remanded Issue

### i. First Half of the BWC Video: Hearsay Exceptions

**{¶14}** The parties ask us to consider whether the statements made by Monroe in the first half of the BWC video fall under either the excited utterances hearsay exception or the present sense impression hearsay exception.

**{¶15}** We must first parse the statements in the first half of the BWC video into two different categories—those related to Wilcox and his involvement in the shooting, and those related to Wilcox's alleged previous acts. In the first category of

statements, Monroe disclosed Wilcox's identity, his age and birthday, a description of him and his car, and facts regarding the incident. On the other hand, the second category of statements pertained to previous instances when Monroe allegedly filed reports against Wilcox for damaging her car and stalking her. Each of these categories requires a separate analysis for the applicability of the argued hearsay exceptions.

**{¶16}** "Hearsay is defined as an out-of-court statement 'other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Smith*, 2019-Ohio-3257, ¶ 15 (1st Dist.), quoting Evid.R. 801(C). "[W]e review challenges to the admissibility of hearsay statements under an abuse of discretion standard." *Id.*, citing *HSBC Bank USA, Natl. Assn. v. Gill*, 2019-Ohio-2814, ¶ 10 (1st Dist.). An abuse of discretion occurs when the trial court "exercise[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶17}** An excited utterance is a "statement[] made while a declarant is under the stress of a startling event." *Smith* at ¶ 17, citing *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993). Otherwise inadmissible "hearsay statements may be admissible as an excited utterance when: 1) there is an event startling enough to cause 'nervous excitement' in the declarant, 2) the statement, though not strictly contemporaneous, was made before the declarant had time for the nervous excitement to subside, 3) the statement related to the startling event, and 4) the declarant personally observed the startling event." *Id.*, citing Evid.R. 803(2) and *Taylor* at 320-321.

**{¶18}** Monroe's statements to Officer Price within the first category, pertaining to Wilcox's involvement, identifying information, and Monroe's recollection of the incident, certainly qualify as excited utterances. Therefore, the trial court did not err in admitting these statements at trial.

**{¶19}** At the time Monroe spoke with Officer Price, she had just witnessed her boyfriend being shot. Witnessing a deadly shooting could certainly constitute a startling event sufficient to cause "nervous excitement." *See State v. Cherry*, 2024-Ohio-5344, ¶ 70 (2d Dist.) ("The trial court did not abuse its discretion in admitting the 911 call, because Christy's statements in the call were made under the stress of a startling event, namely Cherry's repeatedly beating J.S., which Christy witnessed . . . ."); *see also State v. Tomlinson*, 2021-Ohio-1301, ¶ 47 (8th Dist.) ("And the startling event – the shooting – produced a nervous excitement in Carter and Lee . . . .").

**{¶20}** Monroe made these statements shortly after she witnessed the shooting and she was still visibly upset and "excited" (clutching her chest, crying, and watching first responders actively perform CPR on her lifeless boyfriend). *See State v. Richardson*, 2008-Ohio-644, ¶ 21 (7th Dist.), quoting *Taylor*, 66 Ohio St.3d at 303 ("'[T]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance' as long as the declarant is still under the stress of the startling event when he makes the statement.").

**{¶21}** Lastly, Monroe's statements strictly pertained to the startling event and Wilcox's involvement. *See State v. Zaccone*, 2018-Ohio-5340, ¶ 24-26 (11th Dist.) (holding that the victim's statements regarding the domestic disturbance (i.e., that appellant choked her, slapped her, and punched a hole in their bedroom door) were related to the event and thus were excited utterances); *see also Tomlinson* at ¶ 47 ("Their statement – that the shooter was 'Whoadie' – was related to the startling event.").

**{¶22}** While the first category of statements satisfies the excited utterances exception, the same cannot be said about statements regarding Wilcox's alleged prior acts. This second category of statements within the first half of Officer Price's BWC

video did not pertain to the incident at issue. They were about previous events between Wilcox and Monroe. Monroe's excitement at that moment was a result of her boyfriend being shot, not Wilcox's alleged previous acts.

{¶23} Since the second category of statements does not satisfy the excited utterance hearsay exception, we must determine if they fall within the present sense impression exception to the hearsay rule. A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1). For a statement made after an event to be admissible under this exception, "it must stand very close in time to the event." *Smith*, 2019-Ohio-3257, at ¶ 20 (1st Dist.), citing *State v. Stafford*, 2004-Ohio-3893, ¶ 66 (1st Dist.).

{¶24} The admissibility of these statements under the present sense impression exception meets the same fate as it does under the excited utterance exception. Even assuming the timeliness requirement is met, Monroe's second category of statements to Officer Price did not relate to the event that just occurred. They related to *past* alleged events. They did not describe or explain the event, as required by the rule. Therefore, Monroe's second category of statements were inadmissible at trial.

{¶25} We must now determine if the admission of those statements and the second half of the BWC video constituted harmless error or if their admission requires reversal.

### ii. *Harmless Error*

{¶26} "Harmless error review requires: 1) that the defendant was prejudiced by the admission of the improper evidence at trial, 2) that the appellate court believes

that the error was 'not harmless beyond a reasonable doubt,' and 3) that after excising the improper evidence, the remaining evidence overwhelmingly supports finding the defendant guilty." *Smith*, 2019-Ohio-3257, at ¶ 23 (1st Dist.), citing *State v. Morris*, 2014-Ohio-5052, ¶ 27-29. In other words, if the other evidence presented to the jury overwhelmingly supports the jury's guilty verdict, the trial court's error in admitting Monroe's inadmissible statements was harmless.

{¶27} Monroe's statements made within the second half of the BWC video largely mirror her inadmissible statements within the second category of statements she made in the first half of the video. They mostly pertained to Wilcox's alleged prior acts. But in the second half of the BWC video, Monroe also mentioned that she was pregnant.

{¶28} As to the second prong of the analysis, the trial court's admission of these statements cannot be said to be harmless beyond a reasonable doubt, because there is some *reasonable possibility* that the evidence may have contributed to Wilcox's conviction, as Monroe was the only other witness to the event and her inadmissible statements painted him in a negative light. *See State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987) ("This court has also held that an error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction . . . .").

{¶29} Additionally, these statements were likely prejudicial to Wilcox. Monroe's statements that Wilcox had damaged her car and stalked her certainly could have conveyed to the jury that he was an aggressive, violent, and dangerous person. Thus, the jury could have been more hesitant to find his self-defense claim persuasive, which could mean that the trial court's admission of the statements was not harmless error.

**{¶30}** However, even though the admission of the evidence could have been prejudicial and there is some reasonable possibility that it contributed to Wilcox's conviction, there was ample other evidence supporting the jury's verdict.

**{¶31}** The jury heard three jailhouse phone calls between Wilcox and his sister that all took place in the days following the incident. In those calls, Wilcox's sister mentioned that Monroe was telling people that Wilcox shot the victim, and that when he did so, Wilcox said that he "did not want to lose [Monroe]" (indicating that he did not act in self-defense). At trial, Wilcox admitted that he lied to law enforcement about his involvement in the event and that he lied about his involvement to his sister on the calls.

**{¶32}** Wilcox also recounted an extensive interaction with the victim as part of his self-defense claim. He testified that the victim approached the vehicle, exchanged words with Wilcox, bent down towards Wilcox's car window, stood back up, looked to his left and to his right, and reached for his firearm on his left hip, at which point Wilcox fired the fatal shot. However, surveillance video shows that the whole interaction between the two lasted approximately five to six seconds, making it unlikely that the events unfolded the way Wilcox described. Wilcox then fled the scene after he shot the victim. *See State v. Rose*, 2022-Ohio-3197, ¶ 57 (11th Dist.), citing *State v. Dillon*, 2016-Ohio-1561, ¶ 49 (2d Dist.) ("[Appellant] denied having knowledge that he even stabbed Ruffo . . . . However, appellant fled the scene after his altercation with Ruffo and discarded the knives. . . . (Substantial evidence of appellant's guilt included 'consciousness of guilt as evidenced by his immediate flight,' and his lies to the police.)").

**{¶33}** And while Wilcox stated that he saw the victim reach for his firearm in its holster on his left hip, video evidence showed that first responders discovered the

victim's firearm on his backside once they flipped his body over—nowhere near his left hip. Other witnesses testified that they also never saw anything in the victim's hands or anything that he dropped while he stumbled after being shot (i.e., they did not see him with a firearm in his hand).

**{¶34}** Wilcox's testimony was plagued with credibility issues, which is typically central to a self-defense claim. *See State v. Rose*, 2024-Ohio-5689, ¶ 26 (1st Dist.), citing *State v. Gardner*, 2022-Ohio-381, ¶ 26 (8th Dist.) ("For self-defense claims, witness credibility is often the core issue."). All this additional evidence outside of Monroe's statements made to Officer Price overwhelmingly supports the jury's guilty verdicts. Thus, the trial court's admission of the entire BWC video, which included the inadmissible statements in the first half and the entire second half, was harmless.

**{¶35}** Accordingly, we overrule Wilcox's first assignment of error as it was remanded to this court by the Supreme Court. Thus, we must address the remainder of Wilcox's assignments of error from his original appeal that we did not previously address.

### B. Second and Third Assignments of Error: Sufficiency and Manifest Weight

**{¶36}** In his second and third assignments of error, Wilcox asserts that his conviction for murder was against the manifest weight of the evidence and, alternatively, was unsupported by sufficient evidence. His assignment of error related to the sufficiency of the evidence for his murder conviction was resolved in this court's original opinion in this case. *See Wilcox*, 2023-Ohio-2940, at ¶ 33-39 (1st Dist.). Therefore, we only need to address Wilcox's argument as to the manifest weight of the evidence supporting his murder conviction.

**{¶37}** When deciding whether a judgment entered by the trial court is against

the manifest weight of evidence, we "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. The manifest weight of evidence standard refers to whether there is a "'greater amount of credible evidence . . . to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). We must look to and weigh the "'evidence and all reasonable inferences, consider[ing] the credibility of witnesses and determine[] whether . . . the [fact finder] clearly lost its way and created such a manifest miscarriage of justice'" to justify reversal. *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶38}** Wilcox does not refute that he shot and killed the victim. Thus, the analysis of the evidence supporting his murder charge hinges upon the evidence supporting his self-defense claim. The State had the burden to disprove beyond a reasonable doubt that he "(1) [] was not at fault in creating the situation giving rise to the affray; (2) [] had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape from such danger was in the use of such force, and (3) [] did not violate any duty to retreat or avoid the danger." *State v. Smith*, 2020-Ohio-4976, ¶ 48 (1st Dist.), citing *State v. Barnes*, 2002-Ohio-68. The State argues that Wilcox did not have a bona fide belief that he was in imminent danger of death or great bodily harm.

**{¶39}** As outlined previously, there was considerable evidence that the jury could have relied on in deciding that Wilcox did not act in self-defense. Shortly after the events occurred, Monroe told Officer Price that Wilcox was the individual that shot the victim, and in doing so, she never mentioned any altercation between the two men like the one Wilcox recounted in explanation of his actions. Wilcox fled the scene and continuously lied to law enforcement about his involvement in the event. *See State v.*

*Stevens*, 2025-Ohio-302, ¶ 10 (2d Dist.), citing *State v. Williams*, 79 Ohio St.3d 1, 11 (1997) ("[I]t is universally recognized that an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and the like are admissible as evidence of consciousness of guilt, and thus of guilt itself."). He recounted an extensive series of events that took place before he fired a shot at the victim, but the surveillance video shows that the whole interaction lasted approximately five to six seconds, making Wilcox's story less believable. Lastly, Wilcox stated that the victim was reaching for his firearm on his left hip when Wilcox fired the shot, but first responders found the victim's firearm in his waistband along his backside.

**{¶40}** While Wilcox offered evidence that refuted the State's position that he did not have a bona fide belief of imminent death or great bodily harm that would justify his use of deadly force, that does not mandate a reversal. *See State v. Danner*, 2023-Ohio-638, ¶ 12 (1st Dist.), quoting *State v. Shabazz*, 2016-Ohio-1055, ¶ 20, quoting *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991) ("And where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder." (Internal quotations omitted.) (Cleaned up.)); *see also Danner* at ¶ 20, quoting *State v. Robinson*, 2019-Ohio-3144, ¶ 29 (12th Dist.), quoting *State v. Lunsford*, 2011-Ohio-6529, ¶ 17 (12th Dist.) ("When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." (Internal quotations omitted.)).

**{¶41}** The jury's verdict was not against the manifest weight of the evidence regarding Wilcox's murder conviction, as demonstrated by the evidence outlined

above.

**{¶42}** For those reasons, we overrule Wilcox's second and third assignments of error.

### C. *Fourth Assignment of Error: Ineffective Assistance of Counsel*

**{¶43}** In his fourth assignment of error, Wilcox asserts that he was denied effective assistance of counsel when his trial counsel did not cross-examine "a large number of witnesses." This court previously disposed of this assignment of error as it pertained to Wilcox's convictions for tampering with evidence and possessing a firearm while under disability. *See Wilcox*, 2023-Ohio-2940, at ¶ 42 (1st Dist.). Therefore, we need only address this assignment of error as it pertains to Wilcox's murder conviction.

**{¶44}** To demonstrate ineffective assistance of counsel, Wilcox "must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense, thereby depriving appellant of a fair trial." *State v. Jordan*, 2022-Ohio-2566, ¶ 65 (1st Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because "[a]ttorneys are presumed competent . . . [r]eviewing courts must refrain from second-guessing strategic, tactical decisions and strongly presume that counsel's performance falls within a wide range of reasonable legal assistance." *Id.* at ¶ 66, citing *State v. Minton*, 2014-Ohio-2218, ¶ 13 (6th Dist.), and *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Both prongs from *Strickland* must be established to prevail on an ineffective assistance of counsel claim.

**{¶45}** Wilcox's argument fails to demonstrate that he was prejudiced by his trial counsel's decision to forego cross-examination of several of the State's witnesses. Wilcox's defense rested upon his self-defense claim. He does not deny that he shot the victim. Therefore, the relevant evidence to his defense would be the events leading up

16

to the fatal shot, as it would provide insight as to why he felt the need to use deadly force in self-defense. There were three witnesses to the incident—Wilcox, Monroe, and the victim. Monroe did not testify at trial. Thus, the only witness that could offer relevant insight into whether Wilcox acted in self-defense was Wilcox himself.

{¶46} He argues that his trial counsel should have cross-examined (1) the officer that retrieved Wilcox's firearm from the individual that picked it up after he threw it out of his car, and (2) the examiner that extracted the bullet from the victim and compared it to Wilcox's firearm. Again, Wilcox admits that he shot the victim and that he threw his firearm out of his car window. That is essentially what those witnesses testified to, and Wilcox offers no insight as to what either of the witnesses could have testified regarding his use of self-defense. Furthermore, Wilcox lists several other witnesses, but they also were not witnesses to the event and could not speak to his self-defense claim.

{¶47} More generally, Wilcox did not specify what his trial counsel should have asked (beyond general topics) or what evidence he thought his trial counsel would have elicited as to his self-defense claim had counsel cross-examined the witnesses. *See State v. Beasley*, 2018-Ohio-493, ¶ 155, citing *State v. Frazier*, 2007-Ohio-5048, ¶ 220 ("To prevail on such a claim, a defendant must identify the questions that he believes his counsel should have asked and must provide some sense of the information that might have been elicited."). He has failed to show how he was prejudiced by his counsel's alleged failures, and thus, he has failed to satisfy the *Strickland* standard.

{¶48} For those reasons, we overrule Wilcox's fourth assignment of error.

### D. *Fifth Assignment of Error: Jury Instructions*

{¶49} In his fifth assignment of error, Wilcox argues that the trial court

denied him due process of law by refusing to include a jury instruction with the statutory language pertaining to Ohio's "Stand Your Ground" laws.

**{¶50}** We "review[] a trial court's refusal to give a requested jury instruction for an abuse of discretion." *State v. Akins*, 2024-Ohio-1491, ¶ 55 (1st Dist.), citing *State v. Adams*, 2015-Ohio-3954, ¶ 240. A trial court abuses its discretion when "[it] exercise[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson*, 2021-Ohio-3304, at ¶ 35. An abuse of discretion ""implies that the court's attitude, in reaching its decision, was unreasonable, arbitrary, or unconscionable.""" *State v. R.S.*, 2022-Ohio-1108, ¶ 7 (1st Dist.), quoting *State v. Austin*, 2021-Ohio-3608, ¶ 34 (1st Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Requested jury instructions should ordinarily be given if they are correct statements of the law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusions sought by the requested instruction." *Akins* at ¶ 55, citing *State v. White*, 2016-Ohio-3329, ¶ 72 (1st Dist.), quoting *Adams* at ¶ 240.

**{¶51}** Initially, we find it important to note that while Wilcox submitted a written motion for his requested jury instruction, he did not preserve his objection to the trial court's refusal to include the instruction on the record. The parties briefly discussed the issue with the trial court at the close of the State's case-in-chief, but the trial court reserved its ruling. The parties never spoke of the subject on the record again, and Wilcox did not object on the record before the jury retired for deliberations. Therefore, he potentially waived all but plain error regarding this assignment.

**{¶52}** "Under the plain error standard, first there must be an error, i.e. a deviation from a legal rule. Second, the error must be plain, i.e. an obvious defect in the trial proceedings. Third the error must have affected 'substantial rights,' i.e. the

18

outcome of the trial." *State v. Ramsey*, 2015-Ohio-4812, ¶ 77 (5th Dist.), citing *State v. Johnson*, 2007-Ohio-2792, ¶ 61 (10th Dist.). However, we "'may not reverse a conviction in a criminal case due to jury instructions unless "it is clear that the jury instructions constituted prejudicial error."'" *State v. Campbell*, 2010-Ohio-1940, ¶ 13 (12th Dist.), quoting *State v. Brown*, 2009-Ohio-3933, ¶ 6 (12th Dist.). "'In order to determine whether an erroneous jury instruction was prejudicial, [we] must examine the jury instructions as a whole[, and a] jury instruction constitutes prejudicial error where it results in a manifest miscarriage of justice.'" *Id.*, quoting *Brown* at ¶ 6.

**{¶53}** Wilcox requested an addition to the trial court's self-defense instruction that stated, "The defendant is presumed to have acted in self-defense or defense of another when in a residence or vehicle." Essentially, Wilcox argues that the trial court's refusal to include this jury instruction was prejudicial because it would have instructed the jury that he did not have a duty to retreat before he used deadly force in self-defense.

**{¶54}** However, the trial court's instruction did just that. The jury instructions stated that the jury "may not consider the possibility of retreat as a factor in determining" Wilcox's guilt, and that Wilcox "had no duty to retreat before using force in self-defense if [the jury believed he] was in a place in which he lawfully had a right to be." Therefore, the instructions that were given to the jury conveyed exactly what Wilcox desired. His requested instruction was duplicative.

**{¶55}** Regardless of whether Wilcox preserved his objection to the trial court's instruction, he has failed to show that he was prejudiced. Based on those reasons, the trial court did not err when it did not include Wilcox's requested instruction. We thus overrule his fifth assignment of error.

### E. Sixth Assignment of Error: Sentencing

**{¶56}** In his sixth and final assignment of error, Wilcox asserts that the trial court erred when it sentenced him to 26 years to life imprisonment. Specifically, he takes issue with the trial court's decision to run counts five and six of his indictment (possessing a weapon while under a disability and tampering with evidence) consecutively to his murder charge. He contends that the court should have run the sentences concurrently.

**{¶57}** Under R.C. 2953.08(G)(2)(a) and (b), we must review the record, and we "may increase, reduce, or otherwise modify a sentence . . . or may vacate the sentence and remand the matter . . . if [we] clearly and convincingly find[] either . . . [t]hat the record does not support the sentencing court's findings . . . [or] [t]hat the sentence is otherwise contrary to law." Wilcox is correct that "Ohio law presumes that a defendant convicted of multiple crimes will serve his sentences concurrently." *State v. Glover*, 2024-Ohio-5195, ¶ 38, citing R.C. 2929.41(A). However, a trial court may impose consecutive sentences if it makes the specified findings pursuant to R.C. 2929.14(C)(4).

**{¶58}** Under R.C. 2929.14(C)(4), a trial court "may require the offender to serve the prison terms consecutively if [it] finds that the consecutive service is necessary to protect the public from future crime or to punish the offense and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." In addition to those findings, the trial court must find any of the following under R.C. 2929.14(C)(4):

(a)   The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the

Revised Code, or was under post-release control for a prior offense.

(b)    At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)    The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶59}** Here, the trial court specified that "consecutive sentences [were] necessary to protect [the] public and to punish the defendant, and [were] not disproportionate to the seriousness of [Wilcox's] conduct and the danger [he] poses to the public." The trial court went on to find "that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused . . . was so great or unusual that no single prison term . . . adequately reflects the seriousness of [Wilcox's] conduct." Finally, the trial court noted Wilcox's criminal history, which it believed demonstrated a need to protect the public from his potential future crimes, and that he was on probation when he committed the offenses. Therefore, the trial court imposed consecutive sentences per R.C. 2929.14(C)(4)(a), (b), and (c).

**{¶60}** We "must limit [our] review to the trial court's R.C. 2929.14(C)(4) consecutive-sentencing findings." *Glover*, 2024-Ohio-5195, at ¶ 43. We must not

"premise[] [our] holding on [our] disagreement with [the] aggregate sentence rather than [our] review of the trial court's findings." *Id.* In other words, we must only determine if the record "clearly and convincingly" supports the trial court's findings or if the trial court's sentence is "clearly and convincingly" contrary to law. *Id.* at ¶ 44, citing R.C. 2953.08(G)(2).

**{¶61}** Wilcox does not refute the trial court's ability to impose consecutive sentences, nor does he take issue with any of the trial court's specific findings under the statute. He only takes issue with the proportionality of the sentence imposed by the trial court. "The proportionality prong [] focuses on the defendant's current conduct: the court must find that 'consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.'" *Id.* at ¶ 53, quoting R.C. 2929.14(C)(4).

**{¶62}** The only clear argument that Wilcox puts forth as to why his sentence was disproportionate is that when the facts of his case are compared to those of other murder offenses or if these facts are reviewed on their own, the facts here are not the worst form of the offense. However, other cases are not the standard for reviewing proportionality. *See id.* at ¶ 59 ("The court of appeals also strayed from its role when it compared Glover's sentence to the sentences imposed under other statutes and in other cases. . . . But the appellate-review statute asks a court of appeals to review whether the record clearly and convincingly does not support the trial court's findings []; it does not ask the court of appeals to engage in a comparative analysis of other cases."). We must only analyze whether the record did not support the trial court's findings.

**{¶63}** Wilcox shot and killed the victim with a firearm he was prohibited from possessing (which the trial court noted at the sentencing hearing). *See State v. Smith,*

2025-Ohio-1290, ¶ 15 (6th Dist.) ("[The defendant] repeatedly shot a firearm that he was prohibited from possessing, killed one victim, and nearly killed the second victim."). The trial court emphasized that Wilcox continued to lie about his involvement to law enforcement and to his sister, and that he did not claim self-defense until later in the process. The court took note of the fact that Wilcox disposed of the firearm after he sped off from the scene. These are facts all within the record and ones that Wilcox does not dispute now.

**{¶64}** We cannot "simply substitute [our] view of an appropriate sentence for that of the trial court." *See Glover*, 2024-Ohio-5195, at ¶ 44. In other words, we cannot modify a sentence simply because we may disagree with it. We are confined to the record, and in this case, the record does not clearly and convincingly contradict the trial court's findings.

**{¶65}** For those reasons, we overrule Wilcox's sixth assignment of error.

### III.    Conclusion

**{¶66}** Based on the foregoing analysis, we overrule all of Wilcox's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**KINSLEY, P.J.,** and **MOORE, J.,** concur.